IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R-GROUP INVESTMENTS, INC., | ) |
| Appellant, | ) |
| v. | ) No. 14 C 9717 |
| NODDAH, LLC et al, | ) Judge Virginia M. Kendall |
| Appellees. | ) |

**MEMORANDUM OPINION AND ORDER**

Appellant R-Group Investments, Inc. appeals the bankruptcy court's annulment of an automatic stay. The annulment of the automatic stay validated the sale of property previously owned by R-Group to Appellee WPA 3, LLC. The property was sold in foreclosure proceedings pursued by MB Financial Bank, R-Group's creditor who assigned its rights to Appellee Noddah, LLC. On appeal, R-Group argues that the Bankruptcy Court erred in granting Corona LLC's motion to reopen the bankruptcy and to annul the stay. R-Group further alleges that the Bankruptcy Court erred when it failed to acknowledge that movants lacked standing to annul the stay, that the stay should not have been allowed to proceed due to the doctrine of laches, and that the Bankruptcy Court did not have subject matter jurisdiction. Yet, in filing its appeal, R-Group failed to mention that it never moved to stay the sale of the property once the Bankruptcy Court annulled the automatic stay. The sale has now been confirmed by the state court, and as such, under the Bankruptcy Code the Court cannot disrupt that finalized sale and provide a remedy for the Appellant. As a result, the appeal is rendered moot because the Court has no available

1

remedy it can provide Appellant. For the reasons set forth below, the Court dismisses the appeal for lack of jurisdiction.

## BACKGROUND

This bankruptcy appeal stems from an $800,000 loan R-Group obtained on February 25, 2005, from Interstate Bank ("Interstate") that was secured by property located at 1515 W. Haddon, Chicago, Illinois ("Property"). (Dkt. No. 1, Ex. 5.) R-Group defaulted on the Loan, and on September 24, 2007, Interstate filed for foreclosure in the Circuit Court of Cook County. (Dkt. No. 1, Ex. 11 at 26-31.) Fifteen months later, R-Group filed its first bankruptcy case on December 23, 2008. (Dkt. No. 67 at 10.) Some six weeks after the filing, the Bankruptcy Court dismissed R-Group's first bankruptcy case on February 9, 2009 on bad faith grounds, specifically, R-Group's failure to retain Chapter 11 counsel. (Dkt. No. 40, Ex. 11 at 79.) Further the Bankruptcy Court found that there was cause to modify the automatic stay because R-Group had also failed to pay real estate taxes. (Dkt. No. 40, Ex. 13 at 32.) On September 7, 2009, MB Financial Bank became the successor in interest to the Loan when it acquired Interstate's assets and continued to seek foreclosure on the Property in state court. (Dkt. No. 40, Ex. 3 at 18; Ex. 11 at 34-36.) On June 15, 2012, the state court entered a judgment of foreclosure and ordered the sale of the Property. (Dkt. No. 40, Ex. 11 at 34.) Pursuant to that order, MB Bank conducted a judicial sale ("Sheriff's Sale") on August 8, 2012. (*Id.* at 35.)

Merely seven minutes before the start of the Sheriff's Sale on August 8, 2012, Appellant filed its second bankruptcy case wherein MB Bank was the lone creditor. (Dkt. No. 1, Ex. 4 at 10-17.) Neither the Sheriff nor MB Bank was made aware that the second bankruptcy case had been filed and the sale went forward. The property was sold to 1515 W. Haddon GP2 ("Initial Buyer"). (*Id.* at 34-35.) MB Bank, upon learning of the bankruptcy case, moved for its

2

dismissal and sanctions against R-Group, alleging that R-Group had been involuntarily dissolved, had no operations, had failed to maintain the property, and had failed to pay property taxes on the property for many years. While that motion was pending before the Bankruptcy Court, R-Group moved to voluntarily dismiss its own second bankruptcy just ten weeks after having filed it. The Bankruptcy Court granted the voluntary dismissal on October 22, 2012 thus mooting MB Bank's motion. (Dkt. No. 40, Ex. 11 at 31.)

After the second bankruptcy was dismissed, MB Bank went back to the state court to seek confirmation of the sale. On September 5, 2013, the Initial Buyer contracted to transfer the rights to the certificate of sale of the Property from the Sheriff's Sale to WPA 3 and Corona. (Dkt. No. 40, Ex. 11 at 36.) After bouncing around the state court system from judge to judge for 20 months, in significant part due to R-Group's motions to change judges, on March 7, 2014, MB Bank finally amended its motion to confirm the Sheriff's sale. R-Group, however, once again moved to vacate the sale alleging that it should not be approved because it occurred during the ten weeks that its second bankruptcy case was pending, the same case that it had filed minutes before the sale without notice to the Sheriff or the purchaser, and the same case that it voluntarily moved to dismiss a few weeks later after receiving an opposing motion to dismiss for abuse and seeking sanctions. (Dkt. No. 40, Ex. 11 at 74.) In response, on August 7, 2014, Corona filed a motion to reopen the second bankruptcy case and to retroactively annul the automatic stay on behalf of the Initial Buyer. (Dkt. No. 40, Ex. 10 at 30.) WPA 3 later adopted Corona's position. (Dkt. No. 40, Ex. 10 at 52; Dkt. No. 67 at 59-61; Dkt. No. 40, Ex. 7 at 41-46.) As a result, the Bankruptcy Court reopened the second bankruptcy case on August 18, 2014. (Dkt. No. 24 at 4.) At this point, Noddah entered the fray as the assignee of MB Bank to support Corona's motion to annul the automatic stay. (Dkt. No. 40, Ex. 13 at 10.)

On October 22, 2014, having reviewed the motions before it, the Bankruptcy Court annulled the automatic stay, thereby validating the Sheriff's Sale. (Dkt. No. 40, Ex. 17 at 7-17.) The Bankruptcy Court determined that it was irrelevant whether the Initial Buyer, Corona or WPA 3, had standing because MB Bank, the lender, had standing. In concluding that the automatic stay should be annulled, the Bankruptcy Court found that had the second bankruptcy case not been dismissed on R-Group's own motion, MB Bank's request for relief from the stay would have been granted. (*Id.* at 7.) The Bankruptcy Court held that failing to annul the stay would result in the undoing of years of litigation and a sale that had occurred two years ago which would unduly harm MB Bank. Further, the Initial Buyer, who bought the property in good faith would also be harmed. Most importantly, the Bankruptcy Court determined that the second bankruptcy case should never have been filed and was only dismissed in light of R-Group facing a motion for sanctions based on the filing. Recognizing that MB Bank had a right to lawful exercise of its state court rights, and that the actions of R-Group had only delayed for seven years the adjudication of those rights, the Bankruptcy Court annulled the automatic stay and once again validated the Sheriff's sale. That sale was subsequently confirmed by the state court. Meanwhile, in spite of continually running to court to block the case from going forward in past, R-Group failed to file a motion for stay pending appeal either in the Bankruptcy Court of in the District Court. Instead, R-Group filed this appeal. With respect to the foreclosure proceedings, the state court confirmed the sale of the Property to the Initial Buyer on November 7, 2014. (Dkt. No. 52 at 22-25.) Finally, on November 10, 2014, the Sheriff of Cook County issued a deed for the Property to WPA 2 as assignee of WPA 3, who had purchased the Certificate of Sale from the Initial Buyer. (Dkt. No. 52 at 26-27.)

**DISCUSSION**

I.  **Appellees Had Standing**

The Court concludes that the Bankruptcy Court properly found MB Bank and the other Appellees had standing to seek an annulment of the automatic stay. Pursuant to 11 U.S.C. § 362(d), only a "party in interest" may move to annul an automatic stay, however that term is not defined in the Bankruptcy Code. Whether a party is in interest under Section 362(d) is determined on a case-by-case basis in consideration of the interest and how the automatic stay affects that interest. *See e.g., In re Sweports, Ltd.*, 476 B.R. 540, 542, (Bankr. N.D. Ill. 2012). A mortgagee who violated an automatic stay by enforcing its foreclosure judgment and proceeding with a sale has standing to seek annulment of that automatic stay. *In re Grason*, 486 B.R. 448, 460-61 (Bankr. C.D. Ill. 2013) (finding that although a purchaser of property sold at a foreclosure sale does not have standing to annul an automatic stay, the mortgagee who conducted the foreclosure sale would have standing to do so). MB Bank as successor in interest to the Loan sold the Property at the Sheriff's sale while the automatic stay was in place (albeit for seven minutes), and therefore had standing to seek annulment of the automatic stay as the mortgagee. The Court thus finds that the Bankruptcy Court correctly held that MB Bank had standing to move for an annulment of the automatic stay.[1]

R-Group asserts that neither Corona nor WPA 3 had standing because neither was the party that bid for the Property at the Sheriff's sale and neither was a bona fide purchaser of the Property. But as the Bankruptcy Court properly found, Corona and WPA 3 can join MB Bank's motion to annul the automatic stay that MB Bank had standing to file because only one party needs to have standing for all parties to have standing. *See Bowsher v. Synar*, 478 U.S. 714, 721

---

[1] The Court rejects R-Groups argument that Noddah did not have standing because as assignee in MB Bank's interest in the Loan, Noddah has standing via MB Bank.

(1986) (where appellees are a group, only one member of the group needs to sustain an injury to create standing). As support for its argument that MB Bank's standing does not also create standing for Corona and WPA 3, R-Group cites to *In re National Indus. Chemical Co.* for the principle that "a litigant must assert his own legal rights and interests." No 98 C 4081, 1998 WL 887065 at *4 (N.D. Ill. 1998). But that case dealt with one party who sought to annul an automatic stay rather than a group of parties in which one has standing; as such, it is not applicable to this case. (*Id.*) Accordingly, the Court finds that Appellees had standing to seek annulment of the automatic stay in the Bankruptcy Court.

## II.     Appellant's Appeal is Moot

This Court has jurisdiction to review decisions of the bankruptcy court pursuant to 28 U.S.C. § 158(a). Whether the Appellant's failure to obtain a stay of the bankruptcy court's order annulling the automatic stay rendered its appeal moot is a question of law that the Court reviews de novo. *In re CGI Indus., Inc.*, 27 F.3d 296, 298 (7th Cir. 1994).

### A.     Appellant Failed to Move for a Stay

R-Group asks the Court to review the bankruptcy court's decision to annul the automatic stay that resulted in validation of the Sheriff's Sale of the Property. The Bankruptcy Court ordered the annulment on October 22, 2014 and the state court approved the sale on November 7, 2014. (Dkt. No. 40, Ex. 17 at 7-17; Dkt. No. 67, Ex. K at 113-16.) But Appellant failed to timely move in the Bankruptcy Court for a stay of the annulment of the automatic stay that would have prevented the approval of the sale of the Property and preserved the issue for this appeal.[2] When the state court approved the Property's sale, 11 U.S.C. § 363(m) was triggered. Section 363(m) provides:

---

[2] Appellant did move for a stay in state court on December 12, 2014 after the state court confirmed the sale. (Dkt. No. 67 at Ex. M.) But the issue for mootness purposes is whether Appellant moved the Bankruptcy Court for the

6

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

R-Group should have moved the Bankruptcy Court for a stay after the October 22 annulment and before the November 7 state court approval of the Sheriff's Sale. If they had, then under Section 363(m), the Court would have jurisdiction over this appeal. The reasons supporting the need to file such a motion for stay is that failing to do so harms "the public's interest in finalizing bankruptcy sales to encourage buyers to purchase the debtor's property, to prevent injury to creditors, and to insure that adequate sources of financing remain available" that Section 363(m) protects. *In re Osborn*, 24 F.3d 1199, 1203 (10th Cir. 1994) (abrogated in part on other grounds by *Eastman v. Union Pac. R.R.*, 493 F.3d 1141, 1156 (10th Cir. 2007)). R-Group's failure to timely move for a stay moots this appeal because under Section 363(m) the Court cannot reverse or modify the confirmed Sheriff's Sale which is the exact relief that R-Group seeks--the reversal or modification of the confirmed Sheriff's Sale. (Dkt. No. 67 at 36.) The unavailability of a remedy is the definition of mootness which means that the Court cannot entertain this appeal for lack of jurisdiction. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.") (quote and citation omitted). Furthermore, "[i]f a case becomes moot on appeal, the appellate court loses jurisdiction." *In re Smith*, 964 F.2d 636, 637 (7th Cir. 1992).

---

stay after that Court's annulment was ordered on October 22, 2014 and before the sale was confirmed by the state court on November 7, 2014.

Accordingly, the Court finds that it has no jurisdiction to consider the Appellant's appeal because the Court can provide no remedy as the Sheriff's Sale has been finalized.

R-Group cites to several cases outside of the Seventh Circuit for the premise that the failure to seek a stay does not moot its appeal. *See City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1225-26 (6th Cir. 1995); *Matter of Manges*, 29 F.3d 1034, 1040 (5th Cir. 1994); *In re Club Assocs.*, 956 F.2d 1056, 1069-71 (11th Cir. 1992); *In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1374-75 (9th Cir. 1987); *In re AOV Indus.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986); *Matter of 1983 Lorraine Street Assocs.*, 198 B.R. 16, 25 (E.D. N.Y. 1996). The Court however is bound by Seventh Circuit law that dictates that under Section 363(m) an appellant must move to stay a sale in order to appeal. *See In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986) (holding appeal of bankruptcy court decision moot under Section 363(m) because appellant failed to obtain a stay); *Matter of UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) (citing Section 363(m) as an example of when the Court "should keep their hands off a consummated transactions" when the sale was not stayed pending appeal); *In re River West Plaza-Chicago*, 664 F.3d 668, 672 (7th Cir. 2011) (finding that only where the purchase was not made in good faith can the Court disturb the bankruptcy court's decision in contravention of Section 363(m)); *In re CGI Indus., Inc.*, 27 F.3d at 299-300 (failure to obtain a stay "cannot be overlooked" and renders the appeal moot); *In re Vetter Corp.*, 724 F.2d 52, 54-55 (7th Cir. 1983) (holding appeal is moot because appellant failed to obtain a stay and purchaser was in good faith); *Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 938 (7th Cir. 2006) (concluding appeal from bankruptcy court is moot because there was no stay and the bankruptcy court made an explicit finding of good faith). The Seventh Circuit is not alone in its strict interpretation of Section 363(m). *See In re Gucci*, 105 F.3d 837, 839-40 (2d Cir. 1997) (concluding under Section 363(m)

that "appellate jurisdiction over an *unstayed* sale order issued by a bankruptcy court is statutorily limited to the narrow issue of whether the property was sold to a good faith purchaser."); *In re Stadium Mgmt. Corp.*, 895 F.2d 845, 847 (1st Cir. 1990) ("Good faith purchasers under § 363 are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

Finally, R-Group argues that its state court motion to stay is sufficient under Section 363(m) to avoid mootness. (Dkt. No. 67 at 13.) But R-Group misses the purpose of Section 363(m), which is to require a stay of the sale "lest the sale proceed and the appeal become moot." *In re CGI Indus.*, 27 F.3d at 299. Here, R-Group filed its motion to stay the Sheriff's sale on December 12, 2014 when the state court had already confirmed the Sheriff's sale on November 7 and a deed was issued on November 10. By failing to move for a stay of the sale until after it was finalized, R-Group did not ensure that the sale was halted and thus, it is the same as if R-Group had never filed its December 12 motion to stay.

**B.   Appellees are Good Faith Purchasers**

In light of R-Group's failure to move for a stay after the bankruptcy court annulled the automatic stay, the only way the Court has jurisdiction under Section 363(m) is if R-Group can show that Appellees are not good faith purchasers. "[T]he sole ground § 363(m) provides for modifying terms of a sale completed in the absence of a stay" is a challenge to a purchaser's good faith status. *In re River West Plaza-Chicago, LLC*, 664 F.3d at 672. Section 363(m) of the Bankruptcy Code promotes two policies: first, it encourages finality in bankruptcy sales by protecting good faith purchases; and second, it limits the jurisdiction of the Court to cases where it can fashion a remedy. *See In re CGI*, 27 F.3d at 299 (citing to *In re Stadium Mgmt. Corp.*, 895 F.2d at 847-48). As applied to this case, the Court notes the need to protect Appellees as good faith purchasers of the Property by allowing them to rest easy knowing that their purchase will

9

not be snatched back by the court, as well as the reality that the Court knows of no available remedy for R-Group. The Bankruptcy Code does not define good faith, but rather places the burden of proving bad faith on the party alleging it. *See id.* at 939; *In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986). Thus, R-Group bears the burden of establishing that Appellee purchased the Property in bad faith.

R-Group argues that Appellees are not good faith purchasers because Appellees did not inform the Bankruptcy Court that they potentially do not have standing, knew about the automatic stay when they acquired the Property, made misrepresentations about the Property's ownership, and improperly assigned title to the Property. (Dkt. No. 67 at 7-11.) In particular, R-Group challenges the sale of the property to other entities over the course of the proceedings and makes accusations or conspiracy and fraud regarding the transfers. Yet, he fails to support his accusations with facts and evidence and relies instead on his conclusion of collusion. Without more, the Court is left with merely a vague and unsupported suspicion posited by R-Group that something nefarious has occurred with the property transfer making the original purchaser a purchaser in bad faith.

A purchase is not made in good faith if "there was collusion, fraud, or the sale otherwise manifested bad faith." *Hower*, 445 F.3d at 938. Bad faith in the context of Section 363(m) also occurs when there is "an attempt to take grossly unfair advantage of other bidders." *In re Rock Indust. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978). Without factual support for its accusation that the Initial Purchaser somehow was acting fraudulently by subsequently transferring the property, R-Group cannot satisfy its burden of proving bad faith. R-Group also fails to cite any case law to support that a subsequent transfer supports an inference of Likewise, the Court has found none that is applicable to these facts. In short, R-Group's claims

of bad faith do not relate to the Sheriff's sale itself. Instead, they pertain to the years of subsequent litigation, and do little to undermine the validity of the initial sale except to conjecture that it was not performed in good faith. The Appellees' actions after the sale are not relevant for determining whether the sale itself was in bad faith. *See e.g., In re Wilson,* 536 B.R. 218, 223 (Bankr. N.D. Ill. 2015) ("The critical inquiry here is whether [the party] knew or should have known of the bankruptcy at the time of the automatic stay violation."). Finally, accusations of bad faith at the time of purchase also land on deaf ears when the Court takes into account the manipulative actions of R-Group to stop the inevitable – a sale of property for which it has failed to pay the mortgage and taxes on for years. For instance, R-Group filed its second bankruptcy only seven minutes before the Sheriff's sale, thereby installing an automatic stay and thwarting any attempts to sell the Property. It is not possible that Appellees could have learned of the bankruptcy filing during those seven minutes, nor does R-Group make any effort to prove that it did, so as to establish that bad faith existed when the property was sold. R-Group later moved to dismiss that second bankruptcy only after MB Bank moved for sanctions against it. And while R-Group argues that Appellees demonstrated bad faith by waiting two years to move for validation of the Sheriff's sale, R-Group overlooks its own role in punting the case from judge to judge in state court again prolonging the inevitable. In sum, R-Group's arguments for bad faith ring hollow in light of its own actions in this case which have been merely orchestrated to lower its own liability on a loan on which it defaulted. Consequently, R-Group failed to fulfill its burden of proving bad faith on the part of the Appellees. As such, Appellees are good faith purchasers and therefore under Section 363(m) this appeal is moot.

## **CONCLUSION**

For the reasons stated therein, the Court upholds the Bankruptcy Court's finding that Appellees had standing to seek an annulment of the automatic stay and dismisses the appeal for lack of jurisdiction because it is moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/30/2015